UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

TERRY P. WILLIAMS, )
)
Plaintiff, )
)
vs. )
) No. 1:13-cv-01605-SEB-MJD
CAROLYN W. COLVIN Commissioner of )
Social Security, )
)
Defendant. )

**REPORT AND RECOMMENDATION**

Plaintiff Terry Williams ("Williams") requests judicial review of the final decision of the Commissioner of the Social Security Administration ("Commissioner") denying his application for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act ("the Act"). *See* 42 U.S.C. §§ 416(i), 1382c(a)(3). For the reasons set forth below, the Magistrate Judge recommends that the Court **REVERSE** the decision of the Commissioner and **REMAND** the matter for further proceedings.

**I. Procedural History**

Williams filed an application for SSI on May 19, 2011, alleging an onset of disability as of August 9, 1997.[1] Williams' application was denied initially on July 12, 2011 and denied on reconsideration on August 10, 2011. Williams timely requested a hearing, which was held over video before Administrative Law Judge Angela Miranda ("ALJ") on May 10, 2012. The ALJ issued a decision on May 24, 2012 which again denied Williams' application for SSI. The Appeals Council denied Williams' request for review on August 2, 2013, making the ALJ's

---

[1] Williams also applied for Disability Insurance Benefits on April 26, 2011. As the Administrative Law Judge's opinion only denied Williams' SSI claim, his SSI denial is the only issue properly before the Court.

decision the final decision for purposes of judicial review. Williams timely filed his Complaint with this Court on October 7, 2013.

## II. <u>Factual Background and Medical History</u>

Williams, now forty-seven years old, reported in his application that he has a pinched nerve in his neck, a frozen shoulder, and a bullet in his right leg. [R. at 177.] Williams reported taking a myriad of prescriptions and over-the-counter medications to treat his severe pain. [R. at 180, 184.] In subsequent reports submitted in 2011, Williams complained of increased neck and back pain, depression, and reported taking medication to treat muscle spasms. [R. at 188, 190, 197, 199.] Williams also reported that he could not raise things over his head. [R. at 191.]

In 2007, Williams was diagnosed with a frozen shoulder and degenerative joint disease of the neck by Dr. Kevin Gebke. [R. at 280.] From May 2010 until the hearing in May 2012, Williams visited an array of medical practitioners for treatment of his neck and back pain. In May 2010, Williams underwent an MRI of his cervical spine. [R. at 208.] Dr. Zachary Dodd reviewed the MRI and noted that Williams' neck and back pain was precipitated by a motor vehicle accident that occurred in 1997. [R. at 208.] Dr. Dodd assessed Williams with a mild degenerative disc disease in part of the spine with some bulging into the nerve passageways. [*Id.*] Dr. Dodd suggested that Williams' chronic pain precluded surgery as a viable treatment option and instead recommended a selective nerve root block injection. [*Id.*]

In February 2011, Williams began visiting Dr. Ira Means for treatment who diagnosed him with neck pain and a frozen right shoulder. [R. at 249.] In April 2011, Dr. Means additionally diagnosed Williams with hypertension and advised that he visit an orthopedic specialist. [R. at 247.] An x-ray performed in May 2011 revealed a healing deformity of the right humerus, unchanged from an x-ray taken in August 2007. [R. at 209.] An MRI of

Williams' cervical spine performed in June 2011 revealed multilevel degenerative joint and disc disease. [R. at 220.] The examiner also noted that part of the cervical spine had an improved appearance. [*Id.*]

On June 25, 2011, consultative examiner Dr. Nauman Salim conducted an evaluation of Williams at the request of the Disability Determination Bureau ("state agency"). [R. at 225-27.] Dr. Salim determined that Williams' range of motion in his right shoulder and neck was significantly limited but noted that "he should be able to feel better after medications and physical therapy." [R. at 227.] Dr. Salim noted that Williams has a normal gait and posture and opined that his disability is "mild." [*Id.*] Dr. Salim also determined that Williams should not lift more than five to ten pounds with his right arm and thirty to forty pounds with his left arm. [*Id.*]

On July 10, 2011, state agency reviewing physician Dr. Jonathon Sands completed a physical residual functioning assessment. Citing Williams' history of right shoulder injury and limited range of motion, Dr. Sands opined that Williams should be restricted from performing any overhead reaching with his right arm. [R. at 230, 232.] Additionally, Dr. Sands suggested that Williams was limited in pushing and pulling with his upper extremities; could occasionally lift or carry up to fifty pounds; frequently lift up to twenty-five pounds; and stand, walk, and sit for a total of about six hours in a workday. [R. at 230.] Dr. Sands suggested no other limitations and indicated that he had reviewed medical source statements and that his assessment was consistent with the objective medical evidence. [R. at 230, 234-35.] Dr. M. Brill affirmed Dr. Sands' assessment in August 2011. [R. at 256.]

Also in July 2011, Williams returned to Dr. Means for a follow up appointment for his neck pain. [R. at 240.] Dr. Means noted that Williams had limited range of motion in his right

shoulder and a tender back. [R. at 241.] An MRI exam of Williams' lumbar spine in September 2011 revealed a disc protrusion resulting in moderate narrowing of the spinal canal. [R. at 260.]

In November 2011, Williams was evaluated by an orthopedic specialist. Dr. Bryan McFarland indicated that Williams' motion was "quite stiff," and, upon examination, concluded that Williams had right arm pain beginning in his cervical spine and right shoulder pain resulting from a humerus fracture healing in a slight varus deformity. [*Id.*]

In December 2011, Williams received a cervical steroid injection and an x-ray of his right shoulder. [R. at 263-65.] The x-ray revealed a stable appearance of the right humeral deformity, stable heterotopic bone growth, and calcified right lung granuloma unchanged from an exam in May 2011. [R. at 265.] Also in December 2011, Williams was evaluated by orthopedic specialist Dr. Ripley Worman. Dr. Worman noted that Williams had "restricted motion" in his right shoulder, limited to about fifty-five degrees of forward flexion abduction. [*Id.*] While Williams was able to move his arm "just beyond the small of his back," Dr. Worman noted that he had "good external rotation of his shoulder" and diagnosed him with a varus deformity. [*Id.*] A CT exam conducted in January 2012 again confirmed the right shoulder deformity and degenerative joint disease. [R. at 267.]

In March 2012, Williams visited Dr. Mara Jeffrey with complaints of shoulder and neck pain. Dr. Jeffrey noted that Williams had tenderness throughout his right trapezius and shoulder and subjective decreased sensation throughout his right arm. [R. at 274.] Dr. Jeffrey prescribed pain medication and encouraged Williams to follow up with a primary care practitioner for chronic pain management. [R. at 272.]

At the hearing before the ALJ in May 2012, Williams indicated that he cannot raise his right hand to the traditional height for administration of the oath and instead "lifted it [about]

4

halfway to [his] shoulder." [R. at 28, 38.] Williams testified that his impairments prevent him from performing a number of traditional living activities and that his pain medication provides only minor relief from his ailments. [R. at 33-34.]

### III. Applicable Standard

To be eligible for SSI, a claimant must have a disability according to 42 U.S.C. § 1382c. Disability is defined as "the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 1382c(a)(3)(A). In determining whether a claimant is disabled, the Commissioner employs a five-step sequential analysis: (1) if the claimant is engaged in substantial gainful activity, he is not disabled; (2) if the claimant does not have a "severe" impairment that significantly limits his ability to perform basic work activities, he is not disabled; (3) if the Commissioner determines that the claimant's impairment meets any impairment that appears in the Listing of Impairments, 20 C.F.R. pt. 404, subpt. P, App. 1, the claimant *is* disabled; (4) if the claimant is not found to be disabled at step three and he is able to perform his past relevant work, he is not disabled; (5) if the claimant can perform certain other available work, he is not disabled. 20 C.F.R. § 416.920(a)(4).

In reviewing the ALJ's decision, the ALJ's findings of fact are conclusive and must be upheld by this Court "so long as substantial evidence supports them and no error of law occurred." *Dixon v. Massanari*, 270 F.3d 1171, 1176 (7th Cir. 2001). The standard of substantial evidence is measured by whether "a reasonable mind might accept [the evidence] as adequate to support a conclusion." *Powers v. Apfel*, 207 F.3d 431, 434 (7th Cir. 2000) (quoting *Diaz v. Chater*, 55 F.3d 300, 305 (7th Cir. 1995)). This Court may not reweigh the evidence or

substitute its judgment for that of the ALJ, but only determine whether substantial evidence supports the ALJ's conclusion. *Overman v. Astrue*, 546 F.3d 456, 462 (7th Cir. 2008). The ALJ "need not evaluate in writing every piece of testimony and evidence submitted," *Carlson v. Shalala*, 999 F.2d 180, 181 (7th Cir. 1993), but the ALJ must consider "all the relevant evidence," *Herron v. Shalala*, 19 F.3d 329, 333 (7th Cir. 1994). In order to be affirmed, the ALJ must articulate her analysis of the evidence in her decision; she must "build an accurate and logical bridge from the evidence to her conclusion." *Dixon*, 270 F.3d at 1176.

## IV. <u>The ALJ's Decision</u>

The ALJ first determined that Williams has not engaged in substantial gainful activity since the application date of April 24, 2011. [R. at 11.] At step two, the ALJ found that Williams' right shoulder impairment, cervical spine dysfunction, and lumbar spine dysfunction are severe impairments that significantly limit his ability to perform basic work activities. [R. at 11-12.] However, at step three the ALJ found that Williams does not have an impairment or combination of impairments that meet(s) or medically equal(s) one of the listed impairments. [R. at 12.]

After step three but before step four, the ALJ determined that Williams has the residual functional capacity (RFC) to perform work within the range of light work as defined in 20 C.F.R. § 416.967(b). [R. at 12-16.] Specifically, the ALJ found that:

> [T]he claimant has the capacity to occasionally lift and carry 20 pounds and to frequently lift and carry 10 pounds. The claimant has the unlimited capacity to push and pull up to the weight capacity for lifting and carrying. The claimant has the capacity to stand and walk 6-8 hours in an 8-hour workday and has the capacity to sit 6-8 hours in an 8-hour workday. . . . [T]he claimant has the capacity to frequently stoop and crouch and to occasionally kneel, crawl, and climb stairs and ramps. The claimant should [not] climb ladders, ropes, or scaffolds in the workplace. . . . [R]eaching with the right arm is limited to frequently in all directions except overhead, which is limited to occasionally. . . . [M]entally[,] the claimant has the capacity to understand, remember, and carry out

6

> simple, routine tasks. . . . [T]he claimant has the capability to utilize common sense understanding to carry out instructions, to deal with several concrete variables in standardized situations and to sustain his mental ability consistent with the normal demands of a workday . . . . The claimant has the capacity to appropriately interact with supervisors, coworkers, and the general-public [sic]. The claimant has the capacity to identify and avoid normal work place hazards and to adapt to routine changes in the work place.

[R. at 12-13.] At step four, because Williams' prior work as a cook helper exceeds his RFC, the ALJ found that Williams is unable to perform his past relevant work. [R. at 16-17.] However, at step five the ALJ found that there are jobs that exist in significant numbers in the national economy that Williams can perform, such as cashier, assembler, and machine operator. [R. at 17-18.] Because of these findings, the ALJ concluded that Williams is not disabled, as defined by the Act. [R. at 18.]

## V. Discussion

Williams raises four arguments as to why this Court should reverse the decision of the ALJ: (1) the ALJ's RFC assessment is not supported by substantial evidence; (2) the ALJ erred at step five by failing to comply with her duty under Social Security Ruling 00-4p; (3) the ALJ erred at step five by failing to resolve the conflict between the Dictionary of Occupational Titles and the vocational expert's testimony; and (4) the ALJ's credibility determination is not supported by substantial evidence. [Dkt. 15 at 10.]

Williams first argues that the ALJ's RFC assessment is not supported by substantial evidence because the ALJ improperly rejected the state agency reviewing physicians' suggested restriction on overhead reaching with his right upper extremity. [Dkt. 15 at 11.] While the ALJ is not required to adopt the opinions of state agency physicians, SSR 96-6p provides that the ALJ is required to consider and "explain the weight given to these opinions" in her decision. SSR 96-6p, 1996 WL 374180 (July 2, 1996); *see McKinzey v. Astrue*, 641 F.3d 884, 891 (7th Cir. 2011).

7

The ALJ is not permitted to only address facts that will support a "finding of non-disability while ignoring evidence that points to a disability finding." *Denton v. Astrue,* 596 F.3d 419, 425 (7th Cir. 2010) (citing *Myles v. Astrue,* 582 F.3d 672, 678 (7th Cir. 2009)). The ALJ is required to "articulate her reasons for rejecting a portion" of a state agency physician's opinion when such opinion conflicts with the ALJ's ultimate RFC findings. *McKinzey*, 641 F.3d at 892; s*ee Walters v. Astrue*, 444 F. App'x 913, 917 (7th Cir. 2011) ("[W]hen there is reason to believe that an ALJ ignored important evidence—as when an ALJ fails to discuss material, conflicting evidence—error exists.") (internal citations omitted). The explanation given must be sufficient so as to allow reviewers to "confidently assess the agency's rationale and afford the claimant meaningful review." *Walters*, 444 F. App'x at 917.

In this matter, state agency physician Dr. Sands completed an RFC assessment, opining that Williams was capable of performing more workplace functions than what the ALJ ultimately determined.[2] In rejecting the majority of Dr. Sands' opinion, the ALJ found that the opinion "did not adequately consider the claimant's subjective complaints." [R. at 16.] However, the ALJ failed to acknowledge Dr. Sands' restriction on any work that requires overhead reaching with the right upper extremity. [*See* R. at 16, 232.] Instead, the ALJ only limited Williams to "occasional" overhead reaching without addressing the conflicting opinion. [*See id.*] While the ALJ's rejection of Dr. Sands' opinion was, as the Commissioner points out, "largely for [Williams'] benefit" [Dkt. 16 at 4], the ALJ's failure to provide an explanation for rejecting the more stringent restrictions on overhead reaching was error.

---

[2] While Dr. Sands opined that Williams could occasionally lift or carry up to fifty pounds and frequently lift up to twenty-five pounds, the ALJ found that Williams could occasionally lift and carry twenty pounds and frequently lift ten pounds. [R. at 12, 230.] Dr. Sands did not suggest any postural limitations; the ALJ found that Williams could frequently stoop and crouch; occasionally kneel, crawl, and climb stairs; and never climb ladders, ropes, or scaffolds. [R. at 12, 231.]

The Commissioner responds that, regardless of the treatment of the state agency physicians' opinions, the ALJ provided ample support for her RFC restriction of "occasional" overhead reaching. [Dkt. 16 at 4.] In essence, the Commissioner is either attempting to supply a post-hoc rationalization for rejecting the consulting physicians' opinions – in violation of the *Chenery* doctrine – or is arguing that the ALJ's error is harmless. *Sec. & Exch. Comm'n v. Chenery Corp.*, 318 U.S. 80, 94 (1943); *Kastner v. Astrue*, 697 F.3d 642, 648 (7th Cir. 2012) ("[T]he Commissioner's lawyers cannot defend the agency's decision on grounds that the agency itself did not embrace."); *Lor v. Colvin,* No. 3:12-CV-00196-JEMS, 2013 WL 5963025 (W.D. Wis. Nov. 7, 2013) (Magnus-Stinson, J.) ("This is either a defense of the ALJ's decision based on grounds that the ALJ himself did not rely or an argument for harmless error."). The Court will address the Commissioner's response as an argument that that the error is harmless.

"[A]n error in failing to analyze and explain important evidence is not harmless simply because the ALJ could have addressed that evidence in a way that would survive substantial-evidence review." *Walters*, 444 F. App'x at 919. Nonetheless, "this kind of error is subject to harmless-error review, and we will not remand a case to the ALJ for further explanation if we can predict with great confidence that the result on remand would be the same." *Schomas v. Colvin*, 732 F.3d 702, 707 (7th Cir. 2013). Thus, the error would be harmless if the record was replete with evidence from which "no reasonable ALJ would reach a contrary decision." *McKinzey*, 641 F.3d at 892 (ignoring state agency reviewing physician's RFC assessment was harmless error when treating physician examined claimant after the assessment and specifically contradicted the assessment's finding); *see also Schomas*, 732 F.3d at 708 (ignoring proposed RFC restriction was harmless error when two other conflicting RFC assessments were completed and other treating physicians imposed work restrictions that contradicted the proposed

restriction). In situations where such overwhelming evidence is not present, failing to discuss the rejection of a state agency physician's opinion is not harmless error and requires remand. *See, e.g., Borski v. Barnhart*, 33 F. App'x 220, 224 (7th Cir. 2002) (holding that lack of "affirmative evidence" supporting ALJ's RFC finding coupled with lack of discussion of contradictory evidence required remand); *Lor*, 2013 WL 5963025 at *5 (holding that ALJ's failure to discuss state agency consulting physician's RFC assessment was not harmless error when multiple plausible conclusions were supported by the record).

In support of her argument that the ALJ's error was harmless, the Commissioner primarily points to the evaluation of Dr. Salim, a consultative examiner, who described Williams' disability as "mild," stated several times that Williams should be able to improve with continued treatment, and opined that he "should be able to work with the present range of motion." [R. at 227.] Yet even Dr. Salim's assessment does not show that Williams could actually raise his right arm overhead. Instead, doctors – including Dr. Salim – consistently assessed Williams with a significantly restricted range of motion in his right arm [R. at 227, 265] and described it as "quite stiff," [R. at 263] "limited," [*Id.*] and "restricted" [R. at 265]. Even at the hearing, Williams was unable to raise his right arm to receive the oath. [R. at 28, 38.] Because the Commissioner has failed to point to such affirmative evidence as would contradict the state agency physicians' RFC restriction, the ALJ has failed to build an accurate and logical bridge from the evidence to the conclusion. The flawed RFC determination taints the ALJ's decision at step five. Thus, the Court cannot conclude "with great confidence" that remand would produce the same result as *Schomas* requires. Accordingly, the Court finds that the ALJ's failure to address his rejection of the state agency physicians' opinion was not harmless error.

Because the Court has determined that the ALJ committed reversible error in his RFC determination, the Court need not address Williams' additional arguments.

## VI. Conclusion

For the aforementioned reasons, the Court should find that substantial evidence does not support the ALJ's determination that Williams is not disabled. The District Judge should therefore **REVERSE** and **REMAND** the matter to the Social Security Administration for further proceedings. Any objections to the Magistrate Judge's Report and Recommendation shall be filed with the Clerk in accordance with 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b), and failure to timely file objections within fourteen days after service shall constitute a waiver of subsequent review absent a showing of good cause for such failure.

Date: August 18, 2014

Mark J. Dinsmore
United States Magistrate Judge
Southern District of Indiana

Distribution:

Adam Mathew Dulik
adam.dulik@gmail.com

Thomas E. Kieper
UNITED STATES ATTORNEY'S OFFICE
tom.kieper@usdoj.gov